IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| TIMOTHY BULLOCK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | No. 3:06-CV-182 |
| ) | |
| USF GROUP BENEFITS PLAN, ) | |
| UNUM LIFE INSURANCE COMPANY ) | |
| OF AMERICA, and ) | |
| UNUMPROVIDENT CORPORATION, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

This civil action is brought pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*. It is now before the court for consideration of the motions for judgment filed by plaintiff [doc. 15] and by defendants [doc. 17]. For the reasons stated herein, defendants' motion will be granted and plaintiff's motion will be denied.

I.

*Background*

Defendant Unum Life Insurance Company of America ("Unum") issued to USFreightways ("USF") a group insurance benefit plan ("the Plan") that provides short term

("STD") and long term ("LTD") disability benefits. [UAMS 191; UACL 116].[1] Unum is the claims administrator for the Plan. [UAMS 215, 218; UACL 149, 152].

Plaintiff worked for USF Glen Moore, Inc. as a truck driver and was a Plan participant. He began receiving STD benefits in August 2004 and transitioned to LTD in February 2005. Plaintiff's entitlement to benefits is not a contested issue in this appeal. Instead, it is the *amount* of benefits received that is in dispute.

Under the Plan, STD benefits are paid as a percentage of "weekly earnings," and LTD benefits are paid as a percentage of "monthly earnings." [UAMS 193; UACL 118]. Other than the distinction of weekly versus monthly calculation, "earnings" is defined identically by each policy.

> "Weekly [or Monthly] Earnings" means your gross weekly [or monthly] income from your Employer in effect just prior to your date of disability. It includes your total income before taxes. It is prior to any deductions made for pre-tax contributions to a qualified deferred compensation plan, Section 125 plan, or flexible spending account. It does not include income received from commissions, bonuses, overtime pay, any other extra compensation, or income received from sources other than your Employer.

[UAMS 205; UACL 132].

USF Glen Moore "pay[s] per mile" driven, and the rate of pay includes a three cent per mile "per diem." [UACL 338]. Plaintiff's pay statements show that the per diem was not included in his taxable gross earnings but was instead a "reimbursement" added to

---

[1] References to "UAMS" indicate a page or pages in the section of the administrative record pertaining to the STD claim. References to "UACL" indicate a page or pages in the section of the administrative record pertaining to the LTD claim.

his net pay. [UAMS 294-311; UACL 68-85].

Unum's initial "weekly earnings" calculation for plaintiff's STD payments did not include the per diem. Plaintiff promptly contested the exclusion of per diem [UAMS 127, 129] and submitted a self-generated earnings chart. [UAMS 128]. Benefits were recalculated based on the chart submitted by plaintiff, which Unum erroneously believed to have been submitted by the employer. [UAMS 147; UACL 358, 362, 610]. This resulted in an overpayment of benefits which was subsequently recaptured by Unum.

Based on a telephone conversation with "Tara," who is apparently a certified public accountant ("CPA"), a Unum employee noted in October 2004 that "the policy is not geared toward truck drivers therefore we can include per-diem since it is a regular [amount] of pay he receives on a regular basis." [UAMS 229]. However, based on information provided by plaintiff's employer and following the advice of legal counsel and a second CPA, Unum determined in February 2005 "that per diem should not be included in the [weekly or monthly earnings] because per diem is extra compensation." [UAMS 328].

Also in February 2005, CPA Robbie Sims wrote that "since the policy does not include 'Other Extra Compensation' we should not include the per diem pay. If the claimant continues to insist that we [include] this pay, you may consider asking the [employer] what their intentions were and verifying the amount they used to determine the premium." [UACL 289]. Unum then contacted Judy McKenzie, a representative of plaintiff's employer.

> Judy indicated to the best of her knowledge they have never included per diem, because it is not consider[ed] gross income. She indicated it is money that is not reported to IRS and if the [claimant] would look at his check stubs it would show the per diem as being separate from his gross pay. Judy indicated the per diem was a reimbursement and every LTD claim that has been filed has been handled the same.

[UACL 301]. Unum spoke with Ms. McKenzie again in March 2005. She again stated that drivers' per diem is not included in gross income, that the insurance premiums paid by USF Glen Moore were based on gross income only, and that the per diem "is a reimbursement for gas[.]" [UACL 303].[2]

On March 20, 2005, plaintiff submitted a letter of appeal to Unum, contesting the exclusion of per diem from his LTD "monthly earnings" calculation. [UACL 334]. In April 2005, Unum again spoke with the employer on multiple occasions and was told that "the per diem is not reported as gross income and it does not show up as money on his W2." [UAMS 355, 357]. By letter dated April 9, 2005, Unum denied plaintiff's appeal, explaining in material part,

---

[2] According to the administrative record, on February 24 and March 8, 2005, plaintiff told a Unum representative that "the per diem was for mileage." [UACL 299, 309]. According to USF Glen Moore payroll procedures, certain specific expenses such as repairs and lodging may be reimbursed above and beyond the per diem if properly documented by receipt. [UACL 626-27]. The payroll procedures also reference a company fuel card through which fuel may be purchased. [UACL 626]. Lastly, the payroll procedures note a more general "Travel Allowance" which "reflects the 6 ¢ per diem. . . . Per diem is the non-taxable income, which, in accordance with the Internal Revenue Service Regulations, is not included on your W-2 earnings statement." [UACL 627].

> Based on information obtained from your employer, the per diem rate is not included in your gross earnings. We were advised that the per diem is a reimbursement for expenses you incur while on the road, and is not taxable. Premiums for this coverage are determined based on the gross earnings, not including the per diem.
>
> Since the per diem is to cover expenses you incur while on the road, it would not be considered as part of your earnings. While you are not working, you would not be incurring these expenses, and therefore it would not be reasonable to include the expenses as part of your disability benefit. The policy is intended to replace a portion of your income which is lost while you are disabled. Reimbursement for expenses incurred while working would not be considered as part of your income. This would be considered "other extra compensation", which is not included in your monthly earnings as defined by the policy.

[UACL 361-62].

Through counsel, plaintiff submitted a second appeal to Unum on August 30, 2005. [UACL 618]. Counsel argued that the LTD policy

> addresses items irrelevant to a truck driver's compensation, like overtime and commission, but does not address per diem at all. It is silent, and therefore necessarily vague on this point. As such, the policy must, by the doctrine of *contra preferendum* [sic], be construed against the drafter - UNUMProvident.
>
> Secondly, the policy does clearly invoke Illinois as its governing jurisdiction. . . . The Illinois Appellate Court, in <u>Swearingen v. Industrial Commission</u> . . ., specifically addressed the question of whether a truck driver's per diem, calculated on a per mile basis, should be considered wages or not. . . . The <u>Swearingen</u> court adopted a general rule that:
>
>> Payments designated as a reimbursement for travel expenses should be included when calculating an employee's average weekly wage to the extent that such payments represent real economic gain rather than the actual reimbursement for actual travel expenses.
>
> . . .

5

> Finally, under the employer's hiring and payroll policies, the three cents per mile "per diem" cannot be considered "extra" in any ordinary sense of that word. It is paid to everyone. . . .

[UACL 618-19]. By response dated September 26, 2005, Unum advised that "the file has been reviewed and our position remains the same." [UACL 631]. Plaintiff filed the present lawsuit on May 19, 2006.

## II.

### *Standard of Review*

In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101 (1989), the United States Supreme Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115. However, if a plan grants the administrator or fiduciary the appropriate discretionary authority, this court must instead review the decision at issue under the "highly deferential arbitrary and capricious standard of review[.]" *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996).

Decisions concerning eligibility for ERISA benefits are not arbitrary and capricious if they are "rational in light of the plan's provisions." *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988). "Before concluding that a decision was arbitrary and capricious, a court must be confident that the decisionmaker overlooked something important or seriously erred in appreciating the significance of evidence." *Marchetti v. Sun*

*Life Assurance Co. of Can.*, 30 F. Supp. 2d 1001, 1008 (M.D. Tenn. 1998) (citing *Wahlin v. Sears, Roebuck & Co.*, 78 F.3d 1232, 1235 (7th Cir. 1996)).

The Plan provides that Unum "will have the broadest discretion permissible under ERISA and any other applicable laws, and its decisions will constitute final review of your claim by the Plan." [UAMS 218; UACL 152]. In light of this provision, the present parties agree that the arbitrary and capricious standard applies in this case.

Plaintiff correctly notes that there is an inherent conflict of interest in this case because Unum is the decision maker for disability claims as well as the entity that pays benefits. However, the existence of such a conflict does not alter the standard of review. *Marchetti*, 30 F. Supp. 2d at 1007. Rather, the administrator's conflict of interest is a factor considered by the court in its assessment of the administrative decision. *See id.; Miller v. Metro Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991). The court will accordingly consider this inherent conflict of interest as a factor in determining whether Unum's decision was arbitrary or capricious.

### III.

*Analysis*

The court has reviewed the record concerning the denial of benefits in this case under the arbitrary and capricious standard and in so doing has taken into account Unum's pecuniary conflict of interest as a factor in the analysis. With regard to the application of this standard, the Sixth Circuit has stated: "When it is possible to offer a reasoned

7

explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F. 2d 689, 693 (6th Cir. 1989) (citation omitted). The arbitrary and capricious standard is the "least demanding form of judicial review of administrative action." *Id.* In its review of the denial of benefits, this court does not substitute its judgment for that of the administrator. *Brown v. Nat'l City Corp.*, 974 F. Supp. 1037, 1041 (W.D. Ky. 1997) (citing *Caterino v. Barry*, 8 F.3d 878, 883 (1st Cir. 1993)).

Plaintiff offers two theories on appeal. First, he argues that the per diem should have been included in his benefits calculation, and that any decision to the contrary cannot survive arbitrary and capricious review. Plaintiff also contends that, at a minimum, the Plan is ambiguous as to per diem and must be construed against the drafter Unum. The court will address these points in turn.

A. Per Diem

Under the Plan, STD benefits are paid as a percentage of "weekly earnings," and LTD benefits are paid as a percentage of "monthly earnings." Plaintiff argues that his per diem plainly falls within the commonly-understood meaning of "earnings." In support of this theory, he offers various definitions of "earnings" from Webster's Dictionary, Black's Law Dictionary, and the Fifth and Tenth Circuit Courts of Appeals. The court deems these citations unnecessary and irrelevant, as "monthly" and "weekly" earnings are defined terms under the Plan itself.

8

> "Weekly [or Monthly] Earnings" means your gross weekly [or monthly] income from your Employer in effect just prior to your date of disability. It includes your total income before taxes. It is prior to any deductions made for pre-tax contributions . . .. It does not include income received from commissions, bonuses, overtime pay, any other extra compensation, or income received from sources other than your Employer.

[UAMS 205; UACL 132]. The court has reviewed Unum's justification for the partial denial of benefits [UACL 361-62] and finds the explanation completely rational (and thus not arbitrary or capricious) in light of the Plan's provisions.

It is first noted that the above-cited definition is partially structured in nonexclusive terms of what is or is not "included" in "earnings." Nonetheless, the definition provides a sufficient framework to support Unum's decision. The Plan first references "gross income" - specifically, "total income before taxes."[3] Further, "earnings" under the Plan "is" the amount of income "prior to any deductions made for pre-tax contributions," whereas plaintiff's pay stubs show that his per diem was added to his *net* income as a reimbursement *after* deductions. It was therefore wholly reasonable for Unum to decide - after consultation with counsel, CPAs, and the employer - that the per diem is "other extra compensation" not included in "earnings" as that term is defined by the Plan.

Further, although the Plan references Illinois as the "governing jurisdiction" [UAMS 191; UACL 116], the court finds distinguishable the *Swearingen* case cited by

---

[3] It is at best disingenuous for plaintiff to have never paid income tax on his per diem but to now argue that those same funds were part of his gross income.

9

plaintiff. *Swearingen* involved a state law worker's compensation definition of "average weekly wage." *See Swearingen v. Indus. Comm'n*, 699 N.E.2d 237, 239 (Ill. App. Ct. 1998). The definition considered by the Illinois appellate court was extraordinarily broad, including "anything of value" such as bonuses and commissions. *See id.* Conversely, the present appeal involves a far more restrictive definition contained within an ERISA-governed Plan restricted to pre-tax income exclusive of bonuses and commissions. *Swearingen* simply does not govern the distinct facts of this case.

The court cannot say that Unum's decision was irrational, unfounded, or without reasoned explanation. In reaching this conclusion, Unum's inherent conflict of interest in its dual roles of claims administrator and payor has been considered. Nonetheless, under the circumstances of the administrative record as discussed above, it was neither unreasonable nor irrational for Unum to conclude that the per diem received by plaintiff was not a part of his gross income and was thus excludable from his benefits calculation as "other extra compensation." On arbitrary and capricious review, Unum's decision must be affirmed.

## B. Contra Proferentum

Plaintiff also argues that the Plan's "earnings" definition is ambiguous as to per diem and must therefore be construed in his favor as the nondrafting party. In support, plaintiff cites *University Hospitals of Cleveland v. Emerson Electric Co.*, 202 F.3d 839 (6th Cir. 2000). *University Hospitals* was an ERISA case involving application of the arbitrary

and capricious standard of review. Plaintiff quotes *University Hospitals* for that panel's statement that "to the extent that the Plan's language is susceptible of more than one interpretation, we will apply the 'rule of *contra proferentum*' and construe any ambiguities against Defendants/Appellees as the drafting parties." *Univ. Hosps.*, 202 F.3d at 846-47 (citing *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 557 n.7 (6th Cir. 1998)).

The court has reviewed: (1) *University Hospitals*; (2) the Sixth Circuit authority relied upon by the *University Hospitals* panel; and (3) the Sixth Circuit's subsequent treatment of *University Hospitals*. The court concludes that the language relied upon by plaintiff is dicta which is inconsistent with the great weight of Sixth Circuit authority on this issue and which is incompatible with the Supreme Court's holding in *Firestone Tire & Rubber Co. v. Bruch*.

In the *Perez* case cited by the *University Hospitals* panel, "the primary issue [was] whether the Plan vests discretionary authority in . . . the plan administrator. If it does, we must apply the arbitrary and capricious standard of review[.]" *Perez*, 150 F.3d at 555. The *Perez* court found no ambiguity in the ERISA plan before it, but nonetheless commented in a footnote, "The rule of *contra proferentum* provides that ambiguous contract provisions in ERISA-governed insurance contracts should be construed against the drafting party." *Id.* at 557 n.7 (citing *Schachner v. Blue Cross & Blue Shield of Ohio*, 77 F.3d 889, 895 n.6 (6th Cir. 1996)).[4] The *Perez* court in its passing mention of *contra proferentum* was not

---

[4] Despite referencing *contra proferentum* in its introductory language, the *University*
(continued...)

11

conducting an arbitrary and capricious review of an administrator's decision but was instead determining whether to apply the arbitrary and capricious standard at all. That is an important distinction.

As for the *Schachner* case relied upon by *Perez* as the sole support for its dicta, the issue of *contra proferentum* was again mentioned only in a footnote. In that footnote, the *Schachner* panel observed that the parties had "devote[d] considerable portions of their briefs" to "advanc[ing] interesting and well-supported" arguments including *contra proferentum*. *Schachner*, 77 F.3d at 895 n.6. The *Schachner* panel expressly declined to consider those arguments. *See id. Schachner* therefore provides no basis for concluding that *contra proferentum* has any application to a court's arbitrary and capricious review of an administrator's decision. *See Mitchell v. Dialysis Clinic, Inc.*, 18 Fed. App'x 349, 353 (6th Cir. 2001) ("And indeed when one reads *Schachner* one realizes that the *Perez* court was likely just citing it for descriptive purposes rather than suggesting that it was the rule in this Circuit. For *Schachner* does nothing more than state in a footnote that the court need not address the issue[.]").

---

⁴(...continued)
*Hospitals* panel (like *Perez*) did not actually apply that doctrine. *See Univ. Hosps.*, 202 F.3d at 850 ("There is no ambiguity here[.]"). Dicta is, by definition, "[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential[.]" *Asmo v. Keane, Inc.*, 471 F.3d 588, 599 (6th Cir. 2006) (Griffin, J., dissenting) (citations omitted); *see also Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 Fed. App'x 949, 953 (6th Cir. 2004) (The *Perez* language quoted by *University Hospitals* is dicta.).

Moreover, the doctrine of *contra proferentum* is inconsistent with the United States Supreme Court decision that established arbitrary and capricious review of ERISA administrator decisions. In *Bruch*, the Supreme Court held that the arbitrary and capricious standard was to be applied by reviewing courts if "the benefit plan gives the administrator or fiduciary discretionary authority . . . to *construe the terms of the plan*." *Bruch*, 489 U.S. at 115 (emphasis added). The Court further observed that "the validity of a claim to benefits under an ERISA plan is likely to turn on the *interpretation of terms in the plan* at issue." *Id.* (emphasis added). Application of *contra proferentum* is inconsistent with the Supreme Court's holding, as there would be no deference due an administrator's "construction" or "interpretation" of plan provisions if every ambiguity was simply to be construed against the drafter. *See Smiljanich v. Gen. Motors Corp.*, 182 Fed. App'x 480, 486 n.2 (6th Cir. 2006) (*University Hospitals* is inconsistent with *Bruch*).

*University Hospitals* is also inconsistent with the greater weight of Sixth Circuit authority on this point. "[W]e grant plan administrators who are vested with discretion in determining eligibility for benefits great leeway in *interpreting ambiguous terms*." *Moos v. Square D Co.*, 72 F.3d 39, 42 (6th Cir. 1995) (emphasis added). "A plan administrator's *interpretation of ambiguous provisions* must . . . be reasonable." *Shelby County Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 935 (6th Cir. 2000) (emphasis added). "At the outset, we note that because the Plan expressly granted to MetLife authority to interpret the Plan, we must give deference to

13

MetLife's interpretation of ambiguous and general terms of the Plan." *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004).

In sum, the court must respectfully agree with post-*University Hospitals* authority that neither *University Hospitals* nor *Perez* "indicate how the arbitrary and capricious standard is affected by applying the state law rule that contracts are construed against the drafter." *Mitchell*, 18 Fed. App'x at 354. The court must also respectfully agree that "the rule stated in *Moos* - a decision that preceded *University Hospitals* - is correct in the light of *Firestone Tire & Rubber Co. v. Bruch*." *Smiljanich*, 182 Fed. App'x at 486 n.2. Assuming *arguendo* that an ambiguity in fact exists in the present Plan, the court declines plaintiff's invitation to introduce the doctrine of *contra proferentum* into its review under the arbitrary and capricious standard.

IV.

*Conclusion*

For the reasons stated herein, the court will affirm the amount of STD and LTD benefits awarded to plaintiff. An order reflecting this opinion will be entered.

ENTER:

<span style="text-align:right">s/ Leon Jordan<br>United States District Judge</span>